UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHIRLEY SHEPARD and ANDREA SHEPARD,

                                    Plaintiffs,

                        -v-

WO HOP CITY, INC., WO HOP 17, INC., and WO HOP 1938, INC.,

                                    Defendants.

18-CV-9634 (JPO)

<u>OPINION AND ORDER</u>

---

J. PAUL OETKEN, District Judge:

       This is a copyright case involving T-shirts with a distinctive dragon design. Uncontroverted evidence shows as follows:  First, Plaintiffs Shirley and Andrea Shepard created the design in 1993.  Second, Defendant Wo Hop 17, Inc. sold T-shirts with the copyrighted design at its Chinatown restaurant.  And third, Wo Hop 17 did not have the Shepards' permission to sell the shirts.  The Shepards are therefore entitled to summary judgment on their infringement claim against Wo Hop 17.  But the Shepards lack evidence linking a second entity — Defendant Wo Hop City, Inc. — to the infringement, so Wo Hop City is entitled to summary judgment in its favor.  And the Shepards lack evidence of scienter as to their claim that the Defendants distributed the shirts knowing that copyright markings had been removed, so the Defendants are entitled to summary judgment on that claim.

       The closer questions are (1) how much the Shepards should receive in damages and (2) whether the third and final Defendant — Wo Hop 1938, Inc. — can be held liable for Wo Hop 17's infringement.  These two issues will proceed to trial.

I.      **Background**

Since 1938, there has been a restaurant called Wo Hop at 17 Mott Street in Manhattan's Chinatown.  (Dkt. No. 112 ¶ 47, 102–03.)  Ownership of the restaurant has changed over the years.  Defendant Wo Hop 17, Inc. bought the restaurant in 2008 and operates it today.  (Dkt. No. 115 ¶ 6.)[1]

Shirley and Andrea Shepard are a mother-daughter team of artists.  (Dkt. No. 112 ¶ 1.)  They operate a design business called Alla Prima.  (Dkt. No. 112 ¶ 4.)  In 1993, the Shepards made a deal with the manager of the prior iteration of Wo Hop (a man named Frankie) for around 1,000 custom-designed T-shirts bearing a dragon design.  (Dkt. No. 112 ¶¶ 47–49.)  The Shepards researched the history and significance of dragon iconography and came up with a design that met with Frankie's approval.  (Dkt. No. 94 ¶¶ 14–29; Dkt. No. 96-13 at 5–6; Dkt. No. 112 ¶ 44.)  The Shepards delivered the shirts to Wo Hop in May 1993.  (Dkt. No. 94-4 at 2; Dkt. No. 112 ¶ 51.)  Frankie placed no additional orders with the Shepards.  (Dkt. No. 112 ¶ 52.)[2]

Twenty-four years later, in 2017, the Shepards stumbled upon an item in GQ magazine titled "T-Shirts That Talk."  (Dkt. No. 94 ¶ 70; Dkt. No. 94-9 at 2; Dkt. No. 96-13 at 20.)  The article featured several dozen trendy graphic tees.  One of those shirts, titled "Wo Hop," looked

---

[1] The facts in this section are taken from the parties' statements of undisputed material facts (*see* Dkt. Nos. 112, 115) and the parties' submissions.  Unless otherwise noted, these facts are properly supported by evidence in the record and are not subject to a genuine dispute.  "Wo Hop" refers to the restaurant at 17 Mott Street.  The three Defendants are referred to as "Wo Hop 17," "Wo Hop 1938," and "Wo Hop City."

[2] The Defendants purport to dispute these facts in their Local Rule 56.1 responses, but point to no evidence contradicting the Shepards' narrative.  The Shepards' narrative about the events of 1993 is amply supported by contemporaneous records and by the Shepards' affidavits and deposition testimony.  The Defendants took no depositions and did not attend Shirley Shepard's deposition.  (*See* Dkt. No. 112 ¶¶ 31–36; Dkt. No. 96-12.)  As a result, the Defendants fail to offer any evidence controverting the Shepards' account of the events of 1993.

similar to the shirt that the Shepards sold to Wo Hop in 1993.  (*Compare* Dkt. No. 94-2 *with* Dkt. No. 94-9 at 2.)  The Shepards asked their lawyer to investigate.  Their lawyer went to the Wo Hop restaurant at 17 Mott Street and bought a T-shirt.  (Dkt. No. 94 ¶ 76; Dkt No. 96 at ¶ 59.)  Below is a comparison of the Shepards' 1993 design (on the left) and Wo Hop's 2017 design (on the right).



(*See* Dkt. No. 94-2 (1993 shirt); Dkt. No. 94-3 (2017 shirt.)[3]

These two designs are virtually identical.  There are two apparent differences:  Some words in the 2017 version are set in a slightly different font and the 2017 version lacks the "© Alla Prima" marking on the bottom right quadrant.

---

[3] Technically, the photo on the right is of the shirt attached to Wo Hop 1938's trademark application (discussed below), not the shirt that the Shepards' attorneys bought.  (*See* Dkt. No. 96-27 at 7 (trademark application); Dkt. No. 94-3 (clearer color photo); Dkt. No. 94 ¶ 30.)  The Shepards have not produced an unfolded photo of the shirt that their attorneys bought, though they did produce a photo of a folded shirt and a receipt.  (*See* Dkt. Nos. 94-10, 94-11.)  Nevertheless, Wo Hop 17's manager confirmed at his deposition that the shirt featured in the trademark application is the shirt sold by Wo Hop 17.  (Dkt. No. 96-7 at 67–68.)  He likewise confirmed that the shirt featured in GQ is one and the same.  (Dkt. No. 96-7 at 29–31.)

After the purchase, the Shepards' lawyer sent a cease-and-desist letter to Wo Hop. (Dkt. No. 115 ¶ 61.) Wo Hop 17 contends that it stopped selling the contested shirts after receiving the letter. (Dkt. No. 115 ¶ 62.) But it appears that Wo Hop 17 had not completely given up on dragon T-shirts. In 2018, an entity called Wo Hop 1938, Inc. filed a trademark application for a new dragon design that looked different from the Shepards' dragon. (Dkt. Nos. 96-26, 96-27.) In support of its application, Wo Hop 1938 attached a photo of both the new dragon and the Shepards' dragon. (Dkt. No. 96-27 at 6–8.) Wo Hop 1938 also stated that the trademark "was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 01/01/2001," that the mark was "used in commerce at least as early as 01/01/2001," and that the mark was "now in use in such commerce." (Dkt. No. 96-27 at 4.) This application was abandoned and never completed. (Dkt. No. 115 ¶ 37.)

The Shepards filed suit in 2018. The operative complaint names three defendants: (1) Wo Hop 17, Inc., which operates the restaurant at 17 Mott Street that sold the allegedly infringing shirts; (2) Wop Hop 1938, Inc., the entity that filed the trademark application; and (3) Wo Hop City, Inc., which operates a restaurant called Wo Hop City at 15 Mott Street, two doors down from Wo Hop 17's restaurant. The complaint asserts two claims: (1) that the Defendants infringed the Shepards' copyright and (2) that the Defendants distributed the copyrighted design while knowing that the "© Alla Prima" marking had been removed.

Both the Shepards and the Defendants have filed cross-motions for summary judgment.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On summary judgment, the party bearing the

burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The Court must view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks and citations omitted).

**III.   Discussion**

The Shepards bring two claims: copyright infringement and removal of copyright management information. The Court first addresses the statute of limitations, holding that this suit is timely. The Court then addresses the infringement claim, holding (1) that the Shepards are entitled to summary judgment as to liability against Wo Hop 17, but that damages must be determined at trial; (2) that Wo Hop City is entitled to summary judgment in its favor; and (3) that there is a genuine factual dispute as to whether liability can be imposed on Wo Hop 1938. Finally, the Court addresses the removal-of-copyright-management-information claim, concluding that the Shepards have not adduced evidence of scienter and that the Defendants are entitled to summary judgment in their favor.

**A.   Timeliness**

Civil copyright suits must be commenced "within three years after the claim accrued." 17 U.S.C. § 507(b). The Second Circuit applies the "discovery rule" to copyright cases. *Sohm v.*

*Scholastic Inc.*, 959 F.3d 39, 50 (2d Cir. 2020).  Under the discovery rule, "an infringement claim does not accrue until the copyright holder discovers, or with due diligence should have discovered, the infringement."  *Id.* (cleaned up).

The Shepards have produced affidavit and deposition testimony that, until 2017, they had no idea that Wo Hop was selling shirts with their design.  They learned about the infringement only when they stumbled upon the 2017 GQ article.  The Defendants point to no evidence undermining this claim.  Instead, Defendants argue that the Shepards *could have* discovered the infringement if they had looked closely.  Defendants point to social media posts of people wearing the contested shirts, and they argue that since the Shepards are courtroom artists, they must have frequented the Civic Center area near Chinatown and might have discovered the infringement before 2017.

But that is not enough.  The discovery rule does not require the Shepards to periodically check on whether their former clients are using old designs without permission.  "[W]ithout identifying facts or circumstances that would have prompted such an inquiry, [the Defendants] cannot rely on the passage of time alone to establish that [the Shepards] should have discovered the alleged copyright infringements at issue in this case."  *Sohm*, 959 F.3d at 51.  The Defendants do not "identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating," let alone identify facts showing that "a reasonably diligent plaintiff would have discovered" the facts constituting the infringement.  *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (applying discovery rule in non-copyright context).

Because the statute of limitations is an affirmative defense, the Defendants would bear the burden at trial of proving untimeliness.  At the summary judgment stage, the Defendants had to produce evidence supporting their affirmative defense.  They have not done so.  Their motion

for summary judgment as to the timeliness issue is therefore denied.  For the same reason, the Shepards' motion for summary judgment is granted as to Defendants' second affirmative defense.[4]

### B.    Copyright Infringement

Having rejected the statute-of-limitations defense, the Court turns to the Shepards' first (and primary) claim: copyright infringement.  To prevail on this claim, the Shepards must prove "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003).  Each of these elements is discussed in turn, followed by specific analysis as to which Defendants could be held liable for the infringement.

#### 1.    The Shepards' Copyright in the Dragon Design

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression," including "pictorial" and "graphic" works.  17 U.S.C. § 102(a)(5).  Copyright protection attaches immediately upon the work's creation, though a plaintiff must register the copyright before she can bring suit.  *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) ("[A]lthough an owner's rights exist apart from registration,

---

[4] *See Overall v. Est. of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) ("Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued."); *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) ("Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case.") (cleaned up); *Senisi v. John Wiley & Sons, Inc.*, No. 13 Civ. 3314, 2015 WL 7736545, at *5 (S.D.N.Y. Nov. 30, 2015) (granting summary judgment as to statute-of-limitations defense in copyright case due to "utter absence of evidence indicating [the plaintiff's] actual or constructive knowledge of her potential claims against [the defendants] more than three years prior to initiating this suit") (cleaned up).

registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights.") (citation omitted).

The key question here is whether the dragon design is "original." 17 U.S.C. § 102(a). To be original, a work must be "independently created by the author (as opposed to copied from other works)" and must "possess[] at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). This is not a high hurdle. Per the Supreme Court: "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Id.* (cleaned up).

The dragon design easily meets this standard. The Shepards have adduced ample evidence that they created a special dragon design for Wo Hop. The Shepards testified that they researched the different types of dragons in Chinese mythology and that they based the design on this research. (*See* Dkt. No. 94 ¶¶ 16–29; Dkt. No. 96-13 at 5–6.) The Shepards chose, for example, to give the dragon five claws because of its significance in the mythological hierarchy. (Dkt. No. 94 ¶ 21.) They also chose to make the dragon look friendlier than most other depictions of dragons. (Dkt. No. 94 ¶ 20.) The Shepards produced calendar entries from 1993 and the original "paste-up" showing the raw form of the design. (Dkt. Nos. 94-1, 94-4.) As discussed in this Court's prior decision in this case, depictions of animals are copyrightable. *Shepard v. Wo Hop City, Inc.*, No. 18 Civ. 9634, 2019 WL 2419860, at *2 (S.D.N.Y. June 10, 2019). This is even more so for mythical creatures. It surely takes at least *some* imagination to draw an animal that does not exist. The dragon design thus fulfills the requisite "minimal degree of creativity" for copyright protection. *Feist Publ'ns*, 499 U.S. at 345.

8

The Defendants argue that the dragon design is similar to other dragons found on shirts sold in Chinatown. That may be true, but it is also irrelevant. Even if the dragon design were *identical* to other Chinatown dragons, it might still be entitled to copyright protection. That is because a work must only be *original*, not *novel*. As explained by the Supreme Court: "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable." *Feist Publ'ns*, 499 U.S. at 346–47. The Defendants point to no evidence that the Shepards copied a pre-1993 design, so the possible existence of similar designs in 2021 does not help them.

In sum, the uncontroverted facts show that the Shepards' dragon was an original creation. It is therefore entitled to copyright protection.[5]

### 2.     Wo Hop 17's Use of the Shepards' Design Without Authorization

Having held that the Shepards own a valid copyright, the Court turns to the second element of the Shepards' copyright claim: unauthorized copying of the copyrighted work. *See Jorgensen*, 351 F.3d at 51.

This issue is straightforward: Wo Hop 17 admits that it sold T-shirts with an exact copy of the Shepards' dragon from 2008 through November 2017. (*See* Dkt. No. 96-7 at 28, 35; Dkt.

---

[5] Had the Shepards registered their copyright within five years of its first publication, the registration would have constituted prima facie evidence of the copyright's validity. *See* 17 U.S.C. § 410(c). But the Shepards prevail even without this presumption. The statute provides that if the copyright registration was obtained more than five years after publication, "[t]he evidentiary weight to be accorded the [copyright registration] shall be within the discretion of the court." *Id.* As explained above, the Shepards have adduced ample evidence to support their claim that the dragon design is an original creation. And there is no dispute that the Shepards obtained a copyright registration in 2017 before filing suit (*see* Dkt. No. 96-1), fulfilling the statutory prerequisite in 17 U.S.C. § 411.

No. 112 ¶ 71(i).)  Wo Hop 17 offers no defense on this element of the copyright claim, other than to argue that any infringement was not willful.  Wo Hop 17 may be factually correct here.  It is plausible that the pre-2008 iteration of Wo Hop copied the Shepards' shirt, and that, when Wo Hop 17 bought the business in 2008, it simply continued selling the shirts without knowing that the design was copyrighted.  But "[e]ven an innocent infringer is liable for infringement." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986).  That is because "intent or knowledge is not an element of infringement," though it might be relevant to damages. *Id.*; *see also* 17 U.S.C. § 504(c)(2).  The Shepards are therefore entitled to summary judgment against Wo Hop 17 as to liability on the copyright infringement claim.

The harder question concerns the damages due to the Shepards.  Three issues merit discussion: (1) the time frame for which damages are available, (2) the type of damages available, and (3) the amount of damages due.

*Time frame for damages*.  As the Shepards concede, notwithstanding the discovery rule, "a successful plaintiff can gain retrospective relief only three years back from the time of suit." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014); *see also Sohm*, 959 F.3d at 51–52 (holding that this portion of *Petrella* is binding precedent).  Since this suit was filed on October 19, 2018, the Shepards may not recover damages for conduct predating October 19,

10

2015.  The damages window will shrink further if, as Wo Hop 17 claims, it stopped selling the infringing shirts on November 15, 2017, when it received the Shepards' cease-and-desist letter.[6]

*Type of damages*.  The Copyright Act allows plaintiffs to seek one of two types of damages: (a) actual damages and profits or (b) statutory damages.  17 U.S.C. § 504(a).  The Shepards have elected to recover actual damages.  *See also* 17 U.S.C. § 412 (providing that statutory damages are generally unavailable if the infringement preceded the registration).  Thus, per the statute, the Shepards may recover "the actual damages suffered by [them] as a result of the infringement" plus "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).

*Amount of damages*.  This brings us to the ultimate question:  whether the Shepards are entitled to summary judgment on the amount of damages due.  They are not.  There are genuine factual disputes as to the number of dragon T-shirts sold by Wo Hop 17 between October 19, 2015 and October 19, 2018.  The parties offer wildly different estimates.  The Shepards claim that Wo Hop sold around 340 shirts within 13 days of the Shepards' first delivery in 1993.  (Dkt. No. 112 ¶ 52; Dkt. No. 94-4 at 2.)  This works out to roughly 25 shirts per day.  Multiplied by three years, it totals 27,400 shirts.  Wo Hop 17, by comparison, surmises that it sold only 300

---

[6] There is an argument to be made that the three-year lookback period should be counted from December 10, 2019, when Wo Hop 17 was named as a defendant.  (*See* Dkt. No. 56.)  The original complaint in this case named only Wo Hop City (which operates the restaurant at 15 Mott Street) under the mistaken belief that it operated the restaurant at 17 Mott Street.  (*See* Dkt. No. 1; Dkt. No. 53.)  The 2019 complaint added Wo Hop 17, the entity that operates the restaurant at 17 Mott Street and sold the infringing shirts.  But the Defendants do not raise this argument, nor do the Shepards address the relation-back doctrine, so the Court need not opine on this issue at this stage.  *Cf. Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746, 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015) (holding that three-year lookback period should be counted from filing of original complaint, because later complaint related back to it); *see also* Fed. R. Civ. P. 15(c)(1) (allowing relation back if the defendant had notice of the action and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity").

11

shirts in total. (Dkt. No. 112 ¶ 19; Dkt. No. 96-7 at 77.) Neither party's number is on particularly sound footing. The Shepards' estimate rests on sales figures from 1993, when Wo Hop was under different ownership. And Wo Hop 17's guesstimate is even less reliable, since it is simply based on social media posts attached to the Shepards' summary judgment papers.

To be sure, much of this uncertainty owes to Wo Hop 17's failure to produce any documents relating to T-shirt sales, claiming that no such records exist. The parties agree only that Wo Hop 17 makes around $1.2 million a year in gross revenue from food, and that this number possibly also includes revenue from T-shirt sales. (*See* Dkt. No. 115 ¶ 18.) But that number is too overinclusive to support an award of actual damages. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001) ("[T]he statutory term 'infringer's gross revenue' should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement."). There are serious factual issues that must be fleshed out. For example: Approximately how many shirts did Wo Hop 17 sell per day? Is it true that, as Wo Hop 17 claims, most shirts were given away for free rather than sold? How much profit did Wo Hop 17 make on each shirt? And when did Wo Hop 17 stop selling the infringing shirts? These variables preclude summary judgment as to damages.

### 3. Liability of Wo Hop City

Having concluded that Wo Hop 17 infringed the Shepards' copyright, the Court now concludes that the Shepards have not adduced any evidence tying Wo Hop City, Inc. to the infringement. Wo Hop City is entitled to summary judgment and is dismissed from this case.

Wo Hop City operates the Wo Hop City restaurant at 15 Mott Street. This restaurant is two doors down from Wo Hop 17's restaurant at 17 Mott Street. The Shepards do not claim that Wo Hop City sold any shirts or had anything to do with the infringement. Instead, they assert a veil-piercing theory of liability under which Wo Hop 17's liability would travel up vertically to

its shareholders, then horizontally to Wo Hop City. The Shepards point to various connections between the two businesses. They share a similar name; they share the same lawyer; they have some stockholders in common; Wo Hop City had listed its address for service of process as 17 Mott Street; and so on.

But none of this is enough to pierce the veil. Wo Hop City is incorporated in New York, so New York's veil-piercing laws apply. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). "New York law disfavors disregard of the corporate form." *Sutton 58 Assocs. LLC v. Pilevsky*, 189 A.D.3d 726, 729 (1st Dep't 2020) (cleaned up). "Under New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (cleaned up).

The Shepards have adduced virtually no evidence as to either element. As to the first element, there is no evidence that the two Wo Hops disregarded corporate formalities, that either of them was inadequately capitalized, that they intermingled funds or property, that they did not deal with each other at arm's length (or that they dealt with each other at all), or that either of them paid or guaranteed the other's debts. *See id.* (listing veil-piercing factors); *see also HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 00967, 2021 WL 918556, at *24 (S.D.N.Y. Mar. 10, 2021) ("Although overlap in ownership or founding members may help support a conclusion that two corporations are alter egos, this feature alone is an insufficient basis for establishing alter ego status."). And as to the second element, the Shepards adduce no evidence that the alleged relationship was "used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult*, 268 F.3d at 63 (cleaned up). There is

simply no evidence tying Wo Hop City to the infringement. Summary judgment is therefore granted for Wo Hop City.

### 4. Liability of Wo Hop 1938

Having granted partial summary judgment for the Shepards on their infringement claim against Wo Hop 17, and having granted summary judgment for Wo Hop City on the infringement claim against it, the Court turns to the third defendant: Wo Hop 1938. There is a genuine dispute of fact as to whether Wo Hop 1938 participated in Wo Hop 17's infringement. Both motions for summary judgment as to Wo Hop 1938 are therefore denied.

Wo Hop 1938 was incorporated in 2015. (Dkt. No. 115 ¶ 30.) It claims to have no employees or operations. (Dkt. No. 112 ¶ 76.) It appears that its sole function was to hold Wo Hop 17's intellectual property — most significantly, the "Wo Hop" trademark, which is Wo Hop 1938's sole asset. (Dkt. No. 112 ¶ 96.) The reason for Wo Hop 1938's presence in this suit is a 2018 trademark application that it filed. It is not entirely clear what exactly the application was for, but it appears that it tried to trademark a dragon design different from the Shepards' design. In support of its trademark application, Wo Hop 1938 attached a photo of the Shepards' design and stated that the trademark "was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 01/01/2001," that the mark was "used in commerce at least as early as 01/01/2001," and that the mark was "now in use in such commerce." (Dkt. No. 96-27 at 4.) This application was abandoned and never completed. (Dkt. No. 115 ¶ 37.)

There is a genuine factual dispute as to whether Wo Hop 1938 was involved in Wo Hop 17's infringement. On the one hand, Wo Hop 1938 made a sworn statement that it sold T-shirts from 2001 to 2018, and, to support that statement, attached a photo of the Shepards' design. But there is strong countervailing evidence. First, it appears that the 2018 application was to register

14

a *different* dragon design, which would *replace* the Shepards' design.  Second, the application does not expressly say that Wo Hop 1938 used the mark; rather, it says that it was used "by the applicant *or the applicant's related company or licensee or predecessor*."  (Dkt. No. 96-27 at 4 (emphasis added).)  This is consistent with the narrative that Wo Hop 1938 was just a passive company made to hold intellectual property, and that only Wo Hop 17 committed the infringement.  And third, Wo Hop 1938's president and sole shareholder said at deposition that the 2001–2018 date range was just a placeholder and was not based on any facts.  (Dkt. No. 96-8 at 47.)  This explanation rings true:  It would make no sense for Wo Hop 1938, which was incorporated in 2015, to have sold shirts in 2001.  Nor, for that matter, would it make sense for Wo Hop 17 to have done so, since it was incorporated in 2008.

This presents a close call.  The most logical inference is that the 2018 application was an ill-advised attempt to register a new dragon design, and that the statements therein (a) were not true or (b) referred to Wo Hop 17's use of the design, not Wo Hop 1938's use of the design.  But Wo Hop 1938 arguably did claim, in a statement whose falsity could be punishable by law, to have sold shirts with a dragon design from 2001 through 2018, and specifically attached the Shepards' design to support that statement.  The Court cannot choose between these competing inferences at the summary judgment stage.  Both motions for summary judgment as to Wo Hop 1938 are therefore denied.

    **C.**    **Removal of Copyright Management Information**

Having resolved the motions for summary judgment as to the copyright infringement claim, the Court turns to the Shepards' other claim: that the Defendants distributed the copyrighted design while knowing that the "© Alla Prima" marking had been removed, in violation of 17 U.S.C. § 1202(b).

Section 1202 protects the integrity of copyright management information, or "CMI."  The Shepards focus on subsection (b)(3), which provides, in relevant part:

> No person shall, without the authority of the copyright owner or the law . . . distribute . . . works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, [and] knowing [or] having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

*Id.* § 1202(b).  The statute defines CMI to include the name of the author and the name of the copyright owner.  *Id.* § 1202(c)(2), (3).

To prevail on a (b)(3) claim, a plaintiff must prove "(1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement." *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (cleaned up).

There is no genuine dispute as to the first two elements:  The 1993 shirt clearly said "© Alla Prima" and Wo Hop 17 distributed copies of the shirt without this CMI.  (*See* Dkt. No. 94-2 (1993 shirt); Dkt. No. 94-3 (2017 shirt.).)  But the Shepards adduce no evidence as to the third and fourth elements — the "double-scienter" requirement that a defendant *both* knew that the CMI had been removed *and* knew or had reasonable grounds to know that the distribution would aid an infringement.  *Mango*, 970 F.3d at 171.

Wo Hop 17 took over the business in 2008, fifteen years after the first (and only) order that the Shepards received from the restaurant.  There is no evidence that Wo Hop 17's shirts still had the CMI in 2008, when Wo Hop 17 took over the business.  There is no evidence that Wo Hop 17 knew that the shirts used to have CMI in 1993.  There is no evidence that Wo Hop 17

removed any CMI. There is no evidence that Wo Hop 17 knew that the Shepards were the creators of the dragon design. There is no evidence that Wo Hop 17 knew that anyone claimed a copyright to the dragon design. There is no evidence that Wo Hop 17 knew that its actions would aid or conceal any infringement. And there is no CMI-related evidence against the other two Defendants — Wo Hop City and Wo Hop 1938. All we know is that the shirts had CMI in 1993 but not in 2017. That is not enough. *See, e.g.*, *Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 58 (2d Cir. 2021) (affirming grant of summary judgment on § 1202(b)(3) claim because plaintiff did not proffer evidence of defendant's knowledge).

Since the Shepards have adduced no evidence to support the double-scienter requirement, summary judgment is granted for the Defendants on count three.

### IV. Conclusion

For the reasons discussed above:

- Summary judgment is granted for the Shepards as to timeliness. The Defendants' second affirmative defense is dismissed.

- Summary judgment is granted for the Shepards as to liability against Wo Hop 17 on count one (copyright infringement). The amount of damages shall be determined at trial.

- Summary judgment is granted for Wo Hop City on all claims. It is dismissed from this case.

- Both motions for summary judgment as to Wo Hop 1938 are denied. The question whether Wo Hop 1938 took part in Wo Hop 17's infringement will be decided at trial.

- Summary judgment is granted for all Defendants on count three.

The parties are directed to confer and to submit a joint letter within 21 days after the date of this Opinion and Order addressing proposals for the remaining phase of this case, including (1) proposed dates in 2022 for a jury trial (or a representation that all parties consent to a bench trial); (2) estimated length of time for trial, and (3) any proposals for settlement discussions,

including whether the parties agree to be referred to Magistrate Judge Lehrburger for a settlement conference.

The Clerk of Court is directed to close the motions at Docket Nos. 92 and 101.

SO ORDERED.

Dated: September 20, 2021

New York, New York

_____
J. PAUL OETKEN
United States District Judge